196 So.2d 456 (1967)
GULF OIL CORPORATION, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY and the Atlantic Land & Improvement Company, Appellees.
Nos. 6917, 6916.
District Court of Appeal of Florida. Second District.
March 10, 1967.
Rehearing Denied April 5, 1967.
Thomas C. MacDonald, Jr., William T. Keen, J. Warren Frazier, of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellant.
E. Snow Martin, of Martin & Martin, Lakeland, for appellees.
LILES, Acting Chief Judge.
Appellant, plaintiff below, brings this appeal from an adverse final decree rendered in a declaratory judgment suit.
Plaintiff brought a declaratory judgment suit against defendants seeking construction of a portion of a license agreement between the parties. This agreement permitted plaintiff, as licensee, to maintain and operate pipe lines located on defendants' property for the purpose of unloading petroleum from tank steamers.
A stipulated statement of facts shows that two employees of plaintiff oil company, Stanley Scally and John D. Barfield, were burned and received personal injuries as the result of a fire on defendants' premises. The fire resulted from a hose rupture which occurred during the unloading of a tanker.
Scally and Barfield brought suit against defendants charging negligence on the part of defendants in operating and maintaining an open flame kerosene operated switch lamp located adjacent to plaintiff's unloading *457 docks. On the basis of this charge of negligence against defendants, a compromise settlement was made with Scally and Barfield for $100,000.00. Defendants sought indemnity from plaintiff under the terms of the licensing agreement between the parties and specifically under the fourth paragraph thereof which provides:
"Fourth: That Licensee [plaintiff] shall and will at all times indemnify and save harmless the Licensors, their successors and assigns, from, and will pay and discharge all loss, costs, expense and damage to persons or property resulting from or in any manner connected with the laying, maintenance, operation or presence of said pipe lines or contents thereof on the premises of the Licensors or the removal of said pipe lines therefrom."
The switch lamp referred to above was an existing facility at the time the agreement was executed by the parties.
The trial court was confronted with the question of whether the language quoted above required indemnification by plaintiff of defendants' negligent acts. The court found that the quoted indemnity clearly and unequivocally required plaintiff to indemnify defendants. We are asked to determine the correctness of this ruling.
The question of whether the language of an indemnity agreement is sufficient to indemnify one against his own negligence is thoroughly discussed in the annotation found in 175 A.L.R. 8 and the discussion in 27 Am.Jur. Indemnity § 15. The conflicting views on the subject were ably presented by Chief Judge Tuttle in Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256 (5th Cir.1961). The case involved the construction of a clause in a lease agreement which provided in part:
"* * * [I]t is hereby expressly stipulated that the said Express Company will fully indemnify and save harmless the said Terminal Company and the Railway Companies using the Terminal Company's station and property from and against all charges, expenses, loss, damage, injuries, suits, or judgments, arising by reason of or in connection with occupation and use of the premises of the Terminal Company by the Express Company under this agreement, whether to the property of, or persons in employ of, the Terminal Company * * *."
Judge Tuttle stated:
"At first glance, this would not seem to present a difficult problem of interpretation, for given its ordinary and natural meaning, the word `all' leaves no room for exceptions. Since, absent extraordinary circumstances, we are bound to interpret a contract in accordance with the natural and ordinary meaning of the language employed therein, there would appear to be no alternative to the conclusion that, under Paragraph 9 of the lease, REA was obligated to indemnify JTC for losses due to the latter's negligence.
"Unfortunately, however, the solution is not so simple. We are faced with numerous cases wherein it has been held that a promise to indemnify for `all losses, etc.' will not relieve the indemnitee from liability for losses caused by his own negligence. Apparently, the theory underlying these decisions is that the assumption of this liability is such an `unusual' and `hazardous' undertaking, that there can be no presumption that the indemnitor meant to assume it absent explicit reference to the indemnitee's negligence in the contract. Indeed, this is perhaps the majority, although far from a universally accepted, rule." 296 F.2d 256 at 261.
Although the contention was made in the Jacksonville Terminal Co. case that the courts of Florida have adopted the "majority view," the federal court, after a discussion of the Florida cases cited in support of that contention, concluded that Florida courts had not adopted such a position and that the federal court was "* * * unfettered *458 by any rule of construction which would require us to do violence to the plain and clear meaning of the language employed therein. * * *" The court then held that the language of the indemnity clause clearly and unequivocally manifested an intention to absolve the Jacksonville Terminal Company for all losses, including those caused by its own negligence. The holding in the Jacksonville Terminal case was followed by subsequent federal decisions including American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 315 F.2d 856 (5th Cir.1963), involving an application of Florida law to an indemnity clause.
It is true that Florida courts have yet to make a definite pronouncement as to whether Florida has adopted the so-called "majority rule." Yet there have been strong indications as to what Florida's position is on the matter. In Smith v. Ryan, 142 So.2d 139 (D.C.A.Fla. 1962), (which did not involve an indemnity agreement similar to the one in the instant case) this court said:
"It is never presumed that a contract is intended to protect one against his own negligence, and hence, unless it clearly so states, the courts hold that such was not the intention. Annotation 175 A.L.R. 8; Jackson v. Florida Weathermakers, Fla. 1951, 55 So.2d 575. * * *" [Emphasis added.] 142 So.2d at 141.
The case of Nat Harrison Associates, Inc. v. Fla. Power & Light Co., 162 So.2d 298 (D.C.A.Fla. 1964), cert. denied, 166 So.2d 754 (Fla. 1964), involved construction of the following contractural clause:
"* * * Contractor, upon acceptance of this purchase order, agrees to protect, defend and hold the Company free and unharmed against any liabilities whatsoever resulting in connection with performance of the described work by Contractor or its employees."
In holding that the clause did not amount to an agreement by appellant to indemnify the appellee against its own negligence, the court stated:
"It is the general principle of law that contracts of indemnification which attempt to relieve a party of its own negligency are not looked upon with favor. * * * In order for such a contract to be so construed, it must be clear and unequivocal. See: Jackson v. Florida Weathermakers, Fla. 1951, 55 So.2d 575; Kay v. Pennsylvania R. Co., 156 Ohio St. 503, 103 N.E.2d 751; 27 Am. Jur., Indemnity, § 15; cases collected in Division IV, Subdivision B, of the annotation beginning at page 8 of 175 A.L.R. * * *" [Emphasis added.]
In the recent case of Fla. Power & Light Co. v. Elmore, 189 So.2d 522 (D.C.A.Fla. 1966), the court stated:
"The indemnity contract as contained in the purchase order was as follows:
"`Contractor, [Sunshine Contractors, Incorporated] upon acceptance of this purchase order, agrees to hold the Company free and unharmed against any liabilities whatsoever resulting in connection with performance of the described work by Contractor or its employees.'
"The trial court was eminently correct in holding that the contract did not indemnify the indemnitee against losses resulting from its own negligence, and in so holding followed the law as established by the Supreme Court in Jackson v. Florida Weathermakers, Fla. 1952, 55 So.2d 575, on rehearing at p. 579, and as held by this court in Nat Harrison Associates, Inc. v. Florida Power & Light Company, Fla.App. 1964, 162 So.2d 298. And see Smith v. Ryan, Fla.App. 1962, 142 So.2d 139, 141.
"In the Jackson case the Supreme Court held that `in the absence of clear and unequivocal terms [an indemnity contract] must be construed to be a contract to indemnify only against the negligence of the indemnitor, and not that of the *459 indemnitee,' citing 27 Am.Jur., Indemnity, § 15 and the Annotation in 175 A.L.R., Division IV, Subdivision B (§ 17, p. 29) where the rule is so stated, with the addition that intent to indemnify the indemnitee against his own negligence will not be inferred from general language, and that such contracts are to be strictly construed. The contract in the instant case contains no reference to indemnifying against negligence of the indemnitee, or other language indicating by clear and unequivocal terms the intent to do so." [Emphasis added.]
It is evident, then, that Florida decisions hold that an indemnity agreement which indemnifies against the indemnitee's own negligence must state this in "clear and unequivocal" language. It is also clear that in Nat Harrison Associates, Inc. v. Fla. Power & Light Co., 162 So.2d 298 (D.C.A.Fla. 1964) and Fla. Power & Light Co. v. Elmore, supra, the court ruled that the words "against any liabilities whatsoever" did not constitute "clear and unequivocal" language sufficient to indemnify the indemnitee against its own negligence. The language of the Elmore decision indicates that the court adopted the majority rule that there can be no presumption that an indemnitor meant to assume liability for an indemnitee's negligence unless there is explicit reference to the indemnitee's negligence in the contract. We likewise conclude that in order for an indemnity clause or contract to indemnify against an indemnitee's own negligence, the clause or contract must expressly state that such liability is undertaken by the indemnitor.
Thus is would appear that the majority rule is the better, and that in order for one to indemnify against indemnitee's own negligence general language will not suffice. The term clear and unequivocal goes to the specific indemnification; that is, the language "any liabilities whatsoever" as used in the Elmore case, supra, as well as "shall and will at all times indemnify and save harmless * * * and will pay and discharge all loss," the language used in the instant case, is not the clear and unequivocal language sought, but rather there must be language specifically designating indemnification against one's own negligence.
The language of the indemnity clause in the instant case contains no reference to indemnifying against the negligence of the indemnitee which is necessary to exclude it from the majority rule, and thus it was error for the trial judge to enter a declaratory judgment finding the clause did indemnify defendants against their own negligence.
The declaratory judgment and the final judgment appealed are therefore reversed.
In view of our decision, appellees' cross-assignment regarding attorney's fees has become moot.
Reversed.
PIERCE, J., and ODOM, ARCHIE M., Associate Judge, concur.