WALLACE, Judge.
In a third-party action for contractual indemnity against its former customer, a leak detection service sought the recovery of the attorney’s fees and costs that it incurred in defending the underlying lawsuit brought by the customer’s homeowner’s insurance carrier. The circuit court refused to award the requested attorney’s fees and costs, ruling that the language in the indemnification provision contained in the parties’ contract was so vague and ambiguous that it was unenforceable. The leak detection service appeals. Because we find the pertinent language of the indemnification provision to be clear and unequivocal, we reverse.
I. THE FACTS
On Target, Inc., operates a leak detection service.[1] Technicians employed by On Target use specialized equipment and techniques to detect water leaks with a high degree of accuracy. As part of their service, On Target technicians may also expose a leaking pipe and make a temporary repair. A plumber makes the permanent repair to the pipe.
In April 2005, Anthony Podorski and Nancy Podorski, his wife, experienced a leak under the floor of their residence in Sarasota County. Mr. Podorski contacted On Target to address the problem. An On Target technician responded and presented Mr. Podorski with a two-page form titled “Customer Information Card and authorization to proceed with the work.” In addition to authorizing On Target to proceed with the job, the Customer Information Card provided general information about the nature and extent of the services provided by On Target. The Customer Information Card also included the following pertinent paragraph, which contains the indemnification provision at issue in this case:
In the process of locating your leak, furniture may need to be moved; carpet may need to be cut and rolled back; tiles or linoleum may need to be lifted and/or other non-tech tasks performed including excavations. If requested and attempted, On Target Technicians will use due care to accomplish these chores, HOWEVER On Target Inc and On Target Technicians shall not be responsible for any damage whatsoever, actual or perceived, which may result from any locating procedures. If the first locate is incorrect, the Technician will return for a relocate. Property owner, tenant and/or guardian hereby agrees to hold harmless On Target Inc and On Target Technicians absolutely in this regard and to defend same in any action which may *182 develop pursuant to any of these activities.
(Bolding in original.)
Mr. Podorski signed the Customer Information Card to authorize the work, and he left the residence. The On Target technician located the leak, made a hole through a single floor tile and into the slab, and performed a temporary repair of the leaking pipe. Upon the completion of On Target’s work and the permanent repair by a plumber, Mr. and Mrs. Podorski were unable to locate a matching tile to replace the single tile that On Target had damaged in the course of its work. The damaged tile was located in the residence’s foyer.
Mr. and Mrs. Podorski filed a claim with their homeowner’s insurance carrier, Allstate Floridian Insurance Company, for the damaged floor. Instead of insisting on more limited repairs to the flooring, Allstate approved the replacement of all of the tile in the Podorski residence at a cost of $17,290. Allstate subsequently demanded reimbursement of this sum from On Target, and On Target denied liability.
II.THE PROCEEDINGS IN THE CIRCUIT COURT
Allstate, as subrogee of Mr. and Mrs. Podorski, filed an action against On Target for breach of contract. On Target answered Allstate’s complaint and filed a third-party complaint against Mr. Podorski for indemnification. Mr. Podorski moved to dismiss On Target’s third-party complaint for failure to state a cause of action. When the circuit court denied Mr. Podor-ski’s motion to dismiss the third-party complaint, Allstate filed a notice dismissing its action against On Target.
Next, On Target sought the recovery from Mr. Podorski of its fees and costs for defending Allstate’s subrogation action. On Target based its request for fees on the indemnification provision in the Customer Information Card. After a hearing, the circuit court refused to award On Target its attorney’s fees and costs. The circuit court reasoned that “the vague and ambiguous language on the Customer Information Card renders any intended indemnification unenforceable.” In support of its ruling, the circuit court relied on the decision in Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627 (Fla.1992).
III. THE STANDARD OF REVIEW
On Target does not address the question of the applicable standard of review. Allstate suggests that the circuit court’s decision is a discretionary one that should be reviewed for abuse of discretion. We disagree with Allstate. The circuit court’s ruling turns on its interpretation of the contract between On Target and Mr. Podorski. “[A] decision interpreting a contract presents an issue of law that is reviewable by the de novo standard of review.” Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627, 630 (Fla. 1st DCA 1999) (citing Inter-Active Servs., Inc. v. Heathrow Master Ass’n, 721 So.2d 433 (Fla. 5th DCA 1998)).
IV. THE PERTINENT CASE LAW
The circuit court ruled that the indemnification provision contained in the Customer Information Card was unenforceable against Mr. Podorski because it was vague and ambiguous. The circuit court relied on the Cox Cable Corp. decision in support of its ruling. In the Cox Cable Corp. case, the contractual language under review was as follows:
Licensee [Cox] shall indemnify, protect and save the Licensor [Gulf] forever harmless from and against any and all claims and demands for damages to property and injury or death to any *183 persons including, but not restricted to, employees of Licensee and employees of any contractor or sub-contractor performing work for Licensee ... which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments....
591 So.2d at 629 (alterations in original). The Supreme Court of Florida held that this language was insufficient to require Cox Cable to provide indemnity to Gulf Power against the consequences of its own negligence even if Cox Cable and Gulf Power were found to be joint tortfeasors. Id. The court explained “that indemnity contracts which -attempt to indemnify a party against its own wrongful conduct will be enforced ‘only if they express an intent to indemnify against the indemnitee’s own wrongful acts in clear and unequivocal terms.’ ” Id. (quoting Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979)).
Several reported Florida decisions analyze comparable indemnification clauses and find them insufficient to require the indemnitor to indemnify the indemnitee against the consequences of its own wrongful conduct. A brief review of a few examples of these cases will help place this case in perspective.
In University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507, 508-09 (Fla.1973), the indemnification clause provided:
Tenant shall indemnify and save harmless the Landlord from and against any and all claims for damages to goods, wares, merchandise and property in and about the demised premises and from and against any and all claims for any personal injury or loss of life in and about the demised premises.
In Steiuart, the Supreme Court of Florida held that the general language of the tenant’s agreement to indemnify the landlord “against any and all claims” was insufficient to require the tenant to indemnify the landlord against the consequences of its sole negligence. Id. at 511. The court explained that “the use of the general terms ‘indemnify ... against any and all claims’ does not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee.” Id. (alteration in original).
In Florida Power & Light Co. v. Elmore, 189 So.2d 522, 523 (Fla. 3d DCA 1966), the pertinent provision for indemnification said:
Contractor ... agrees to hold the Company free and unharmed against any liabilities whatsoever resulting in connection with performance of the described work by Contractor or its employees.
Affirming the trial court’s judgment in favor of the defendant indemnitor, the Third District concluded that “[t]he trial court was eminently correct in holding that the contract did not indemnify the indemnitee against losses resulting from its own negligence.” Id.
Finally, in Gulf Oil Corp. v. Atlantic Coast Line Railroad Co., 196 So.2d 456, 457 (Fla. 2d DCA 1967), the indemnity clause read:
That Licensee (plaintiff) shall and will at all times indemnify and save harmless the Licensors, their successors and assigns, from, and will pay and discharge all loss, costs, expense and damage to persons or property resulting from or in any manner connected with the laying, maintenance, operation or presence of said pipe lines or contents thereof on the premises of the Licensors or the removal of said pipe lines therefrom.
After reviewing the case law, this court concluded “that in order for an indemnity clause or contract to indemnify against an indemnitee’s own negligence, the clause or *184 contract must expressly state that such liability is undertaken by the indemnitor.” Id. at 459. Because the language in the indemnification clause at issue in Gulf Oil Corp. did not contain any reference to indemnifying against the indemnitee’s negligence, this court held that the trial court erred in finding that the clause was sufficient to require the indemnitor to indemnify the indemnitees against the consequences of their own negligence. Id.
V. TWO PRELIMINARY MATTERS
Before proceeding to a discussion of the merits, we note two preliminary matters. First, Cox Cable Corp. and the other cases discussed above involved actions against indemnitors by indemnitees seeking to be indemnified against the consequences of their own negligence. Here, Allstate sued On Target for an alleged breach of contract, not negligence. Allstate claimed that On Target had breached its contract with Mr. Podorski by not obtaining his consent before drilling through the tile and into the slab. In its defense, On Target alleged that Mr. Podorski had expressly authorized it to perform the work necessary to detect and patch the leaky pipe.
The parties do not address the distinction between this case and Cox Cable Corp. and the other cases they discuss in their briefs. However, Allstate’s complaint could be interpreted as an attempt to plead an intentional tort based on On Target’s alleged failure to obtain the homeowners’ consent before employing destructive measures to detect and repair the leaky pipe. Viewed in this light, Allstate’s complaint does portray On Target’s conduct as “wrongful.”
Second, the question of whether Mr. Po-dorski actually authorized On Target to drill through the tile and into the slab has never been resolved. Of course, Allstate’s dismissal of its complaint made the resolution of that issue in the main action unnecessary. After Allstate had dismissed its complaint, On Target’s claims in the third-party action against Mr. Podorski became limited to the recovery of attorney’s fees and costs. Perhaps for this reason, the circuit court appears to have treated the hearing on On Target’s request for its reasonable attorney’s fees and costs as a final hearing on the third-party complaint as a whole.[2]
Neither of the parties presented any evidence at the hearing which resulted in the order under review. The circuit court’s reliance in its order on the Cox Cable Corp. case suggests that it viewed On Target’s conduct as in some sense “wrongful.” However, the circuit did not make any finding on the question of whether Mr. Podorski authorized On Target to employ destructive measures to detect and repair the leaky pipe. Because we conclude that the indemnification provision in the Customer Information Card was sufficient to require Mr. Podorski to indemnify On Target against the loss arising from Allstate’s lawsuit, we may dispose of this case without addressing this unresolved issue any further.
VI. DISCUSSION
The indemnification language from the pertinent paragraph contained in the Customer Information Card states:
On Target Inc and On Target Technicians shall not be responsible for any damage whatsoever, actual or perceived, which may result from any locating procedures. ... Property owner, tenant and/or guardian hereby agrees to hold harmless On Target Inc and On Target *185 Technicians absolutely in this regard and to defend same in any action which may develop pursuant to any of these activities.[3]
This language immediately follows a general description of the types of activities that may be undertaken on the premises by On Target to detect and repair a leaky pipe.
There is a significant difference between the indemnification provision that appears in On Target’s Customer Information Card and the indemnification provisions at issue in Cox Cable Corp. and the other cases discussed above. In Cox Cable Corp. and the other cases, the courts found the indemnification provisions insufficient to require the indemnitor to indemnify the in-demnitee against its negligent acts because of the lack of “language specifically designating indemnification against one’s own negligence.” Gulf Oil Corp., 196 So.2d at 459. Here, the final sentence of the indemnification provision includes the phrase “in this regard” and identifies On Target and its technicians as the indemnitees. Thus the owner agrees to hold harmless On Target and its technicians only to the extent that “any locating procedures” undertaken by them cause damage to the owner’s property. This language is much more specific than the phrase “any liabilities whatsoever resulting in connection with performance of the described work” at issue in Elmore or the extremely broad indemnification against loss of property or life regardless of cause considered in Stewart or the similarly broad language under review in Cox Cable Corp.
To state the point differently, the indemnification provision in On Target’s Customer Information Card puts the owner of the residence or other structure on notice that the locating procedure may cause limited damage to the property and that On Target cannot be held liable for damage caused by it in performing the work that it was hired to do. The owner’s agreement to hold On Target harmless relates solely to the scope of the work and, within that parameter, requires the owner to indemnify against On Target’s “own wrongful acts,” i.e., damage caused by the locating procedure, “in clear and unequivocal terms.” See Cox Cable Corp., 591 So.2d at 629.
Because Allstate’s complaint sought damages caused by the locating procedures, the indemnity clause was applicable to On Target’s defense of the lawsuit. Accordingly, On Target “is entitled to recover, as part of [its] damages, reasonable attorney’s fees, and reasonable and proper legal costs and expenses, which [it] is compelled to pay as the result of suits by or against [it] in reference to the matter against which [it] is indemnified.” Ins. Co. of N. Am. v. King, 340 So.2d 1175, 1176 (Fla. 4th DCA 1976) (citing Fontainebleau Hotel Corp. v. Postol, 142 So.2d 299 (Fla. 3d DCA 1962)); see also Mims Crane Serv., Inc. v. Insley Mfg. Corp., 226 So.2d 836, 839 (Fla. 2d DCA 1969); Am. & Foreign Ins. Co. v. Avis Rent-A-Car Sys., Inc., 401 So.2d 855, 858 (Fla. 1st DCA 1981).
VII. CONCLUSION
For the foregoing reasons, the circuit court erred in failing to award On Target its attorney’s fees and costs. Accordingly, we reverse the circuit court’s order and remand this case for the circuit court to determine and award On Target its rea *186 sonable attorney’s fees and costs incurred in defending Allstate’s action against it.
Reversed and remanded with directions.
LaROSE and CRENSHAW, JJ., Concur.

. There has never been an evidentiary hearing in this case. The facts are taken from the circuit court's order and the pleadings and motions filed by the parties in the court below.

. The parties have not provided us with a transcript of this hearing.

. This language appears in bold print on the Customer Information Card.