272 So.2d 507 (1973)
UNIVERSITY PLAZA SHOPPING CENTER, INC., a Florida Corporation, and Michigan Mutual Liability Company, Petitioners,
v.
Marvin STEWART and American Employers Insurance Company, Respondents.
No. 41799.
Supreme Court of Florida.
January 24, 1973.
*508 H.O. Pemberton and E. Harper Field, of Keen, O'Kelley & Spitz, Tallahassee, for petitioners.
J. Lewis Hall, of Hall, Hartwell & Hall, Tallahassee for respondents.
DEKLE, Justice.
We have for review by certiorari a decision of the First District Court of Appeal, reported at 253 So.2d 756, which conflicts with Thomas Awning and Tent Co., Inc., v. Toby's Twelfth Cafeteria, Inc., 204 So.2d 756 (Fla.App.3d 1967), on the same point of law concerning indemnification agreements. Our jurisdiction stems from Fla. Const. art. V, § 3(b)(3) (1973), F.S.A. We denied oral argument as unnecessary. F.A.R. 3.10(e), 32 F.S.A.
Petitioner University Plaza Shopping Center (hereafter sometimes referred to as "Landlord") leased a building in its shopping center to Respondent Stewart ("Tenant"), who used the premises to operate a barber shop. During the lease period a gas line exploded underneath the barber shop causing fatal injuries to a barber. The legal proceedings arose when the barber's widow sued the landlord for wrongful death. Her amended complaint alleged that the landlord negligently installed and/or maintained a gas line under the barber shop causing the gas explosion and resulting in the barber's death. Shortly thereafter the landlord filed a third-party complaint against the tenant and his insurer, American Employer's Insurance Co., seeking to impose liability on them. The landlord based his action upon the lease agreement containing an indemnity provision which is in pertinent part:
"SECTION 11. INDEMNITY  LIABILITY INSURANCE. Tenant shall indemnify and save harmless the Landlord from and against any and all claims for damages to goods, wares, merchandise and property in and about the demised premises and from and against any and all claims for any personal *509 injury or loss of life in and about the demised premises.

"Tenant shall maintain in full force, during the term of this lease, a policy or policies of comprehensive general liability insurance, in form reasonably satisfactory to the Landlord, written by one or more responsible insurance companies licensed to do business in the State of Florida, which will insure Tenant and Landlord. The coverage under such insurance shall not be less than $100,000.00 for any one injury (including death), and not less than $300,000.00 for any one accident (including death) and not less than $10,000.00 for property damage." (emphasis ours)
In admissions of fact, the landlord conceded that the gas line was under, but not a part of, the leased premises. Upon motion, the trial court entered a summary judgment for tenant saying an indemnity agreement stated in general terms does not apply to liability resulting from the sole negligence of the indemnitee. As to the comprehensive general liability insurance obtained by tenant from American Employer's Insurance Co. pursuant to the lease agreement, the trial judge said the policy is only applicable when the tenant is liable and in this situation the tenant is free from liability; that hence the policy of insurance does not apply in this matter. On appeal, the First District Court of Appeal affirmed without opinion or comment. Certiorari followed here.
Initially we considered, as we always do, whether there is a basis for our jurisdiction. This review disclosed a decisional conflict. In construing a similar indemnity clause, the Third District in Thomas Awning and Tent Co., Inc., said indemnification for "any loss or claims" encompasses the indemnitee's negligence, too. Accordingly, we must fulfill the fundamental purpose for our conflict jurisdiction as basically a court of limited jurisdiction by resolving these conflicting decisions and rendering the law on this point harmonious and uniform.
In this setting the central issue is whether a contract of indemnity stated in general terms of "any and all claims" indemnifies the indemnitee for damages resulting from his sole negligence.[1] We limit our review to this admitted factual situation. Whether indemnification is invoked where joint negligence of both landlord and tenant is alleged against them is not involved; neither is any claim of a pipeline (or other item) located upon the leased premises but controlled or maintained by the landlord, and which causes injury; nor in cases of separate, independent acts of negligence on the part of both indemnitor and indemnitee.[2]
A thorough analysis of the applicable case law throughout the United States indicates divergent views on the particular point of law applicable here. Even so, most courts do agree upon the basic premise that:
"A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms...."[3] (emphasis ours)
The contrasting viewpoints turn on an interpretation of the words "clear and unequivocal terms." Generally, the state and federal cases are divided into three different approaches to this problem. One line of authority adheres to the view that general *510 language such as "any and all claims" in an agreement is not sufficient to impose indemnity for the indemnitee's negligence. In other words, the contract must contain a specific provision providing for indemnification in the event the indemnitee is negligent. Secondly, in a number of the cases, it has been held that promises to indemnify against "any and all claims" includes losses attributed solely to the negligence of the indemnitee.[4] This point of view is based upon the theory that the words "any and all claims" are crystal clear; ergo, all means all without exception. Finally, many cases look to the particular contractual language and any other factors indicating the intention of the parties to determine if the parties "clearly and unequivocally" expressed the intent to indemnify for indemnitee's own negligence.[5]
The decisions applying Florida law on this subject have been mixed. In the interest of clarity and certainty, we shall review these cases and state our viewpoint.
The starting point for our discussion is our earlier decision in Jackson v. Florida Weathermakers, Inc., 55 So.2d 575 (Fla. 1951). There we were concerned with an indemnification agreement in which the indemnitor agreed to purchase public liability insurance. (The agreement did not contain a general clause for indemnity against all losses and claims.) As to the scope of the indemnity provision in Jackson we said "in the absence of clear and unequivocal terms" the agreement indemnifies against the indemnitor's negligence only. It does not include indemnification for the indemnitee's negligence.
In Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256 (5th Cir.1962), our Court of Appeals considered a suit arising under the law of Florida and involving an indemnity provision. The indemnitor had promised to indemnify for all "charges, expenses, loss, damage, injuries, [etc.]" Acknowledging its duty to apply existing Florida law, the federal court examined the Florida cases and said there was no applicable Florida law. In its analysis the Court of Appeals distinguished our Jackson case by saying it did not involve indemnification from "any and all claims" or comparable language; that Jackson was merely concerned with an indemnitor's covenant to obtain public liability insurance. Based upon this rationale and accordingly unfettered by any pertinent Florida rule, the federal court (without certifying the question to us as has been the most recent practice under F.A.R. 4.61[6]) exercised its independent judgment and said an indemnity clause phrased in general language includes indemnification for losses created by the indemnitee's own negligence.
In a subsequent decision,[7] the same Federal Court of Appeals faced a similar factual situation concerning an indemnity provision and requiring an application of Florida law. In that case the federal court, again, without resorting to a certified question, followed its decision in the Jackson Terminal case: an indemnitor's promise to hold the indemnitee harmless from "any and all loss" indemnifies against the indemnitee's own negligence, too.
Notwithstanding these federal decisions, our Second and Third District Courts of Appeal have held that the words "any and all liability" do not include indemnity for consequences resulting from the indemnitee's own negligence. Nat. Harrison Associates v. Florida Power and Light Co., 162 So.2d 298 (Fla.App.3d 1964), cert. denied 166 So.2d 754 (Fla. 1964); Florida Power *511 & Light Co. v. Elmore, 189 So.2d 522 (Fla.App.3d 1966), cert. denied, 200 So.2d 810 (Fla. 1967); and Gulf Oil Corp. v. Atlantic Coastline R.R. Co., 196 So.2d 456 (Fla.App.2d 1967), cert. denied, 201 So.2d 893 (Fla. 1967). The import of these opinions is succinctly stated in Gulf where Acting Chief Judge Liles said, 196 So.2d p. 459:
"It is evident, then, that Florida decisions hold that an indemnity agreement which indemnifies against the indemnitee's own negligence must state this in `clear and unequivocal' language. It is also clear that in Nat Harrison Associates, Inc. v. Fla. Power & Light Co., 162 So.2d 298 (D.C.A.Fla. 1964) and Fla. Power & Light Co. v. Elmore, supra, the court ruled that the words `against any liabilities whatsoever' did not constitute `clear and unequivocal' language sufficient to indemnify the indemnitee against its own negligence... . We likewise conclude that in order for an indemnity clause or contract to indemnify against an indemnitee's own negligence, the clause or contract must expressly state that such liability is undertaken by the indemnitor." (emphasis ours)
Following this decision in Gulf, the Court of Appeals for the Fifth Circuit in United States v. Seckinger, 408 F.2d 146 (5th Cir.1969), applying federal law, had an opportunity to discuss Gulf's effect upon its earlier Jacksonville Terminal case. Succinctly stated the federal court said in footnote 10 that Gulf "expressly declined to follow Jacksonville" and that Gulf is "the latest authoritative pronouncement of Florida Law" on this subject, notwithstanding Thomas Awning & Tent Co. v. Toby's Twelfth Cafeteria, Inc., supra. Although the decision in Seckinger was reversed,[8] this footnote was not affected.
A few years later, our Federal Court of Appeals decided another indemnity case[9] construing Florida law and there recognized the Florida rule which had emerged in Nat Harrison Associates v. Florida Power & Light Co., supra; Florida Power & Light Co. v. Elmore, supra; and Gulf Oil Corp. v. Atlantic Coastline R.R. Co., supra. Applying the view expressed in those Florida cases, the federal court said under Florida law the intent to indemnify the indemnitee for his own negligence "must be specifically provided for in an indemnity contract... ."[10]
At this point we look to the indemnity provision currently under review. In the lease agreement tenant (indemnitor) promises to indemnify landlord (indemnitee) "from and against any and all claims." The indemnity provision does not specifically or affirmatively require indemnification for losses or claims arising from indemnitee's sole negligence. Under these circumstances, the indemnity clause is quite similar, although not identical, to the ones appearing in the two Florida Power & Light cases and Gulf. More importantly, however, the principle of law is the same.
Upon a careful and complete review of the opposing views, we choose to follow the rationale in the two Florida Power & Light cases and Gulf requiring a specific provision protecting the indemnitee from liability caused by his own negligence. Our basic objective in construing the indemnity provision is to give effect to the intent of the parties involved. In our judgment, the use of the general terms "indemnify ... against any and all claims" does not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee.
By way of comparison, we note that this general phrase is one usually employed in direct contracts with a single insured, meaning all of the various and sundry liability claims which may arise against him *512 from his use of the leased premises. In its context the phraseology logically relates to the tenant's occupation of the leased premises  not some outside (though proximately close) independent act of negligence of the landlord regarding a gas line for his shopping center that happened to run under this particular area of the center. It might be likened to a "common stairway" in an apartment complex which was the landlord's separate liability. One would not expect liability to extend under a shopowner's policy for a landlord's negligently maintained common walkway or mall in front of a series of shops (not included in the shopowner's lease). In other words, any decision holding that a general clause itself is sufficient or that such clause coupled with other indicators of intent imputes an intent to indemnify for liability occasioned by the indemnitee's sole negligence, is a harsh result not necessarily contemplated by the parties nor condoned by this Court.
By way of caveat, we note that this cause is for liability resulting solely from the negligence of the indemnitee. With this crucial factor in mind, we specifically limit our decision to similar factual situations by saying the general clause "indemnify ... against any and all claims" or equivalent language does not authorize indemnification for negligence committed by the indemnitee alone.
In making this pronouncement, we are not unmindful of two decisions rendered by the Third District Court of Appeal, St. Pierre v. Food Fair Stores, North Dade, Inc.[11] and Thomas Awning and Tent Co., Inc. v. Toby's Twelfth Cafeteria, Inc., supra, declaring that an indemnity agreement expressed in general terms includes indemnification for damages on account of the indemnitee's own negligence. These opinions state a contrary position which we find to be unsound and unacceptable.
The next point raised by the landlord alleges that the tenant's insurer, American Employer's Ins. Co., who issued the general liability insurance policy required by the lease agreement, is the guarantor of the tenant's contractual liability to indemnify the landlord. We do not quarrel with this allegation. Under the insurance policy the insurer does guarantee payment for liability imposed upon the tenant. However, the insurance coverage does not extend beyond the tenant's liability. By this opinion we have held that the tenant (indemnitor) is not liable for damages arising solely from the landlord's (indemnitee) negligence. Therefore, it necessarily follows that the tenant's insurer has no legal obligation here.
Accordingly, the decisions in Thomas Awning and Tent Co. v. Toby's Twelfth Cafeteria, supra, and St. Pierre v. Food Fair Stores, North Dade, Inc., supra, are overruled in the enunciation of the principle that an indemnity contract written in general language includes the indemnitee's ordinary negligence, so far as inconsistent with this opinion, and are no longer binding as precedent in the courts of this state. The decision of the District Court of Appeal, First District, affirming the final judgment by the able trial judge is hereby approved and the writ of certiorari is discharged.
It is so ordered.
CARLTON, C.J., and ROBERTS and ADKINS, JJ., concur.
ERVIN, J., dissents.
NOTES
[1] We assume for purposes of conflict jurisdiction, without so holding or intimating, that the barber's death was caused solely by the negligence of the landlord, i.e., indemnitee.
[2] Winn-Dixie Stores, Inc. v. Fellows, 153 So.2d 45 (Fla.App. 1st 1963), modified on other grounds, 160 So.2d 102 (Fla. 1964); and Florida Power & Light Co. v. General Safety Equip. Co., 213 So.2d 486 (Fla.App.3d 1968).
[3] 41 Am.Jur.2d, Indemnity, § 15 at p. 700.
[4] Ibid., pp. 700-702.
[5] United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).
[6] National Education Ass'n v. Lee County Board of Public Instruction, 260 So.2d 206 (Fla. 1972).
[7] American Agricultural Chemical Co. v. Tampa Armature Works, 315 F.2d 856 (5th Cir.1963).
[8] 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).
[9] Seaboard Coastline R.R. Co. v. Tennessee Corp., 421 F.2d 970 (5th Cir.1970).
[10] Ibid., p. 973.
[11] 135 So.2d 9 (Fla.App.3d 1961), cert. den. 140 So.2d 117 (Fla. 1962).