282 So.2d 205 (1973)
IVEY PLANTS, INC., et al., Appellants,
v.
FMC CORPORATION, a Delaware Corporation, Appellee.
No. 72-95.
District Court of Appeal of Florida, Fourth District.
August 29, 1973.
Rehearing Denied October 9, 1973.
*206 Thomas B. Tart, of Gurney, Gurney & Handley, Orlando, for appellants.
Larry Sands, of Sands, Smalbein, Eubank, Johnson, Rosier & Bussey, Orlando, for appellee.
MAGER, Judge.
This is an appeal from a final summary judgment entered in favor of defendant-appellee, FMC Corporation. This action was instituted by Ivey Plants, Inc. and Osceola Fruit Distributors, plaintiffs, and sought damages for defendant's breach of contract on an equipment lease and damages for defendant's negligence.
The complaint alleged, inter alia, that the parties entered into a written contract on April 23, 1953, to be renewed year by year whereby defendant agreed to lease to plaintiff a piece of equipment known as a "Flavorseal" machine. Ivey Plants, Inc. was the owner of a citrus food processing plant operated by Osceola Fruit Distributors. The Flavorseal equipment was to be utilized in connection with the processing of the citrus fruit during which process the fruit is apparently treated with a waxing agent.
The lease was in existence on July 25, 1964, when a fire occurred causing extensive damage to plaintiff's building, machinery and other property.
Under the terms of the lease agreement the defendant was to deliver and install the machine in plaintiff's packing house; instruct plaintiff's employees in the use of the equipment and maintain said equipment in good repair and working condition. Plaintiffs allege that as part of the servicing and maintenancing of such equipment, defendant was responsible for maintaining a container to gather excess wax material flowing from such equipment. Plaintiffs also allege that the defendant's breach of contract and negligent conduct arose by virtue of defendant's failure to place and maintain a wax catching container in the machine prior to the date of the fire; that by virtue of defendant's breach and omission, highly explosive material spilled onto the floor and foundation of plaintiff's place of business creating a dangerous condition which resulted in the fire and damage.
Defendant responded by alleging that the fire was caused by plaintiff's negligent and careless use of a welding torch or other flame-producing instrument causing the *207 flame or heating material to drop on the premises; and futhermore, the container in question was placed in the Flavorseal equipment for the purpose of collecting any material that might drip and that it was plaintiff's removal and failure to replace said container that caused the dangerous condition. In addition to defendant's denials and the affirmative defenses of contributory negligence on the part of plaintiffs, defendant cited paragraph 16 of the lease which defendant contends absolved it of any liability resulting from the conduct and acts alleged. Based upon the provisions of paragraph 16 the trial court entered summary judgment.
Paragraph 16 of the lease provides as follows:
"16. Damages. FMC shall not be liable to Lessee for loss, damage or injury to persons (including death) or to property (including citrus fruit) occasioned by or arising from the installation, replacement, maintenance, operation and/or use of said equipment, or any part thereof, and/or any method, process, or material for or with which the same may be employed, nor for damages so sustained, directly or indirectly, or alleged to have been so sustained, by Lessee so occasioned or arising, and whether such damages result from the act or neglect of an officer, agent, or employee of FMC or a third person; and Lessee shall indemnify, defend, and save harmless FMC from and against all liability, cost, or expense which may be sustained by or imposed by law upon FMC on account of any such loss, damage, or injury. FMC, in order to more fully effectuate these provisions, shall have the full benefit of any insurance that may be effected or carried by Lessee or any third person."

The trial court specifically found as follows:
"That there is no genuine issue as to any material fact bearing upon the defense raised by the Defendant in paragraph 5 of its Answer and Counterclaims and that the aforesaid undisputed matters before the Court establish as a matter of law that under the terms of paragraph 16 of the `Flavorseal' Equipment Lease, together with the other pertinent provisions of that lease and the provisions of the Plaintiffs' Complaint and the Defendant's Answer, the Defendant is not legally liable to the Plaintiffs for the loss or damage claimed in this action, or in the event of any such liability, the Defendant would be entitled to indemnity from the Plaintiffs for any such liability that might be imposed upon the Defendant. The Court finds that the pertinent provisions of this lease are not ambiguous and paragraph 16 of the lease clearly and unequivocally limits the liability of the Defendant to the Plaintiffs for claims such as those made in this action even where such claims arise out of the negligence or fault of the Defendant. Therefore, such limitation of liability and indemnity agreement is valid and enforceable under the law of Florida and should be applied and enforced under the undisputed facts of this case."
In our opinion the trial court's interpretation and application of paragraph 16 and the subsequent entry of the summary judgment was erroneous.
A determination of the applicability of paragraph 16 requires an analysis of its language in relation to the subject matter of the lease as well as to the different causes of action.
Paragraph 16 contains two separate and distinct clauses. The first clause (not italicized) is referred to as an exculpatory clause; the second clause (italicized) is in the nature of an indemnity provision. There is a marked and significant distinction between the two clauses. The function of the exculpatory clause is to deprive one of the contracting parties of his right to recover damages suffered due to the negligent act of the other. The indemnity clause or contract simply affects a *208 change in the person who ultimately has to pay for the damages, i.e., the promisor (indemnitor) in an indemnity contract undertakes to protect the promisee (indemnitee) against loss or damage through a liability on the part of the latter to a third person. 175 A.L.R. 8, 21; Royal Indemnity Co. v. Knott, 1931, 101 Fla. 1495, 136 So. 474; cf. University Plaza Shopping Center v. Stewart, Fla. 1973, 272 So.2d 507; Middleton v. Lomaskin, Fla.App. 1972, 266 So.2d 678; Poche v. Leon Motor Lodge, Inc., Fla.App. 1973, 275 So.2d 55.[1] Under both the exculpatory clause and the indemnity provision, the party seeking the limitation of liability or the indemnity may well be the party whose own negligence gave rise to the damages. See Middleton v. Lomaskin, supra, and University Plaza Shopping Center v. Stewart, supra.
Plaintiffs alleged that under the terms of the lease agreement defendant was required to maintain and service the equipment in question. If plaintiffs can prove a breach of this contractual obligation, the provisions of paragraph 16 should not act as a bar to the maintenance of a breach of contract action. If such was the case then the contract would be lacking both in mutuality of obligation and mutuality of remedy, rendering it unenforceable.[2] Insofar as plaintiffs' action is predicated upon breach of contract the language of paragraph 16 does not operate to exculpate or exonerate defendant from performing under the terms of the lease agreement nor would indemnification bar such action between the parties.
The considerations are somewhat different when construing paragraph 16 in light of plaintiffs' action predicated upon the negligent acts of defendant.
In regard to the application of the exculpatory clause which is intended to relieve the party of liability for his own negligence, such clauses while generally considered as valid and enforceable are not looked upon with favor. Middleton v. Lomaskin, supra;[3] 175 A.L.R. 8-157; Danna v. Con Edison Co., Inc., 71 Misc.2d 1029, 337 N.Y.S.2d 722 (1972). Cf. Aloia v. Carrier Corporation, Fla.App. 1971, 244 So.2d 445. No clear-cut rule can be adduced from the various decisions of the courts of this state or our sister states as to the circumstances when exculpatory clauses will not be enforced. Public policy as well as the relationships of the parties to each other have been considered as significant determining factors. For example, where the relative bargaining power of the contracting parties is not equal and the clause seeks to exempt from liability for negligence the party who occupies a superior bargaining position, enforcement of the exculpatory clause has been denied. 175 A.L.R., supra, p. 16; Danna v. Con Edison Co., Inc. supra.[4] Ascertaining the relative *209 bargaining positions of the contracting parties requires a consideration of material issues of fact which, of necessity, would preclude the entry of summary judgment.[5]
With respect to the indemnity clause aspects of paragraph 16, such provisions are generally upheld; however, with particular respect to the contract of indemnity for damages resulting from the indemnitee's own negligence, the rule in Florida has been recently crystallized in University Shopping Plaza, Inc. v. Stewart, supra. In that case, the Supreme Court expressly overruled Thomas Awning and Tent Co., Inc. v. Toby's Twelfth Cafeteria, Inc., 204 So.2d 756 (Fla.App. 1967), and St. Pierre v. Food Fair Stores, North Dade, Inc. (Fla. App. 1961), 135 So.2d 9, cert. den., 140 So.2d 117 (Fla. 1962), concluding that the intent to indemnify the indemnitee for his own negligence must be specifically provided for in the indemnity contract. An indemnification contract which sought to indemnify the indemnitee against "any and all claims" was held by the court not to constitute a clear and unequivocal intent to indemnify for liability occasioned by the indemnitee's sole negligence.
In examining the indemnity clause section of paragraph 16 we do not find what we perceive to be language that would specifically or affirmatively require indemnification for losses or claims arising from FMC's sole negligence. The phrase "and lessee (plaintiff) shall indemnify ... FMC from and against all liability ... imposed by law upon FMC on account of any such loss, damage, or injury ..." is ambiguous. It is suggested that the italic portion relates back to the loss occasioned by the negligence of FMC wherein such reference is made in the exculpatory portion of paragraph 16. However, a reading of the exculpatory portion reflects losses other than those resulting from the negligence of FMC. The language in the indemnity section simply does not meet the standard of University Plaza Shopping Center, Inc. v. Stewart, supra. Therefore, the trial court erred when it held that the indemnification clause, as a matter of law, precluded the maintenance of the action predicated upon the alleged negligent acts of defendant.
In summary we conclude:
1. The exculpatory clause and indemnity provisions of paragraph 16 are not applicable to the complaint maintained by plaintiff Ivey and plaintiff Osceola Fruit Distributors, predicated upon breach of contract.
2. The exculpatory clause of paragraph 16 may be applicable to the complaint of plaintiffs predicated upon the negligence of the defendant, such applicability, however, being dependent upon such factual determinations as the relative bargaining power of the contracting parties.
3. The indemnity provision of paragraph 16 as presently worded does not authorize indemnification for negligence committed by the indemnitee alone.
Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings consistent herewith.
CROSS, J., concurs.
OWEN, C.J., dissents with opinion.
OWEN, Chief Judge (dissenting):
In my opinion the court was correct in entering summary judgment for defendant-appellee upon the basis of Paragraph 16 of the lease, since either the so called *210 "exculpatory clause" or the "indemnification clause" would necessarily apply to effectively bar the action.
I find nothing in the exculpatory clause suggesting that it would not be effective to exclude FMC's liability to the lessee where the alleged loss, damage or injury to persons or property arises out of breach of contract. On the contrary, it seems to me that the language is clear and unambiguous and excludes any liability on the part of FMC to the lessee for loss, damage or injury to persons or to property whether arising out of breach of contract or negligence.
As the majority opinion points out, the indemnity clause is a separate and distinct provision from the exculpatory clause. The parties undoubtedly contemplated that the indemnity clause would provide indemnification only against claims made by third persons, because to require the indemnitor to indemnify against claims made by it manifestly is illogical. On the other hand, the parties undoubtedly contemplated that the exculpatory clause would be given effect in accordance with its rather clear language. The two clauses taken in conjunction would afford FMC full protection, i.e., (1) immunity from claims by lessee and (2) indemnification by lessee against claims by third persons.
On the premise that the parties intended Paragraph 16 to provide FMC with this "full protection", this is the effect we should give to it. If we restrict the operation of the exculpatory clause in such a way as to deprive FMC of immunity from liability to the lessee, we ought to proportionately broaden the scope of the indemnity clause so as to require lessee to indemnify FMC against the lessee's own claims (illogical as this may be). The indemnity clause, obviously refers back to the exculpatory clause, and the latter makes a specific and express reference to FMC's own negligence as a cause of "... any such loss, damage or injury," thus satisfying the requirements of University Plaza Shopping v. Stewart, Fla. 1973, 272 So.2d 507.
For these reasons I respectfully dissent from the majority view and would affirm the summary judgment in favor of appellee.
NOTES
[1] There is a tendency of the courts (as well as the parties herein) to discuss exculpatory clauses in the same breath as indemnity provisions. The cases cited in Middleton, supra, in support of its determination of exculpatory contracts relate exclusively to indemnity contracts which is more fully discussed, infra. See also note 3, infra.
[2] Either both parties are bound or neither is bound. To read paragraph 16 as defendant suggests would result in plaintiff being bound to pay the rental under the terms of the lease yet the defendant would not be bound to perform its obligations under the terms of the lease. Rhetorically, how could defendant be made to perform if liability for nonperformance were limited. And even if it be contended that there is mutuality of obligation but merely there is lacking mutuality of remedy without affecting the reciprocal obligation of the parties, an examination of the "remedy" available to plaintiff suggests it is somewhat nonexistent and beyond "the bounds of reasonableness and fairness". See Bacon v. Karr, Fla.App. 1962, 139 So.2d 166.
[3] It is interesting to note that with the enactment of the "Residential Landlord and Tenant Act" in 1973, the legislature has declared exculpatory clauses to be void and unenforceable, seemingly overruling the decision in Middelton v. Lomaskin, supra. (See Section 83.47, Chapter 73-330, Laws of Florida).
[4] A typical situation involving such inequality for bargaining strength is one where a public utility or a company serving some public function, as a precondition to doing business with them, requires their customer to sign a stipulation exempting the company from liability for negligence. In the case sub judice the plaintiff argues that the defendant maintains a monopoly on the sale of the wax product and does in fact occupy a superior bargaining position.
[5] See alternate to the relative bargaining power principle, as discussed in 175 A.L.R. pp. 17, 18.