## GOLDEN v. SOUTH BROWARD RACQUET AND SPORTS CLUB, Inc.

No. 79-1719 SPH.

County Court, Broward County.

July 11, 1979.

Constance C. Kaplan of Atkinson, Golden, Bacen & Binder, Hollywood, for the plaintiff.

August C. Paoli of Paoli & Paoli, Hollywood for the defendant.

MORTON L. ABRAM, County Court Judge.

*Final judgment:* This matter came before the court pursuant to the Rules of Summary Procedure, without jury.

Plaintiff was a member of the defendant club, a private corporation, offering its facilities for exercise and recreation. On April 4, 1979, following the usual practice, plaintiff was given a key to one of the lockers maintained on the premises to store personal belongings while using the facilities. Plaintiff placed his clothing together with his billfold, watch and a ring in the assigned locker, locked the door, and proceeded to one of the racquet-ball courts, taking the key with him. A short while later he was informed by an employee of the club that someone had apparently entered the premises, broken into his locker and removed some of his property. Plaintiff immediately returned to the locker room and discovered that his watch was missing together with a $20 bill. Having placed his ring in one of the pockets of his clothing, he did not discover that it was missing until sometime after the police had been summoned and completed their preliminary investigation. Although defendant did not concede that the ring had been removed by the unknown intruder, there appears to be no doubt that the ring, valued by plaintiff at $975 (Plaintiff's Exhibit No. 1) was in fact removed from the locker by whoever took the watch and money.

Two days later plaintiff chanced to observe an individual, employed by the defendant club, wearing his watch, while at a local restaurant. This individual explained that he had purchased the watch from someone else. Plaintiff recovered his watch. No further explanation as to the missing ring and money was forthcoming by either party. Plaintiff alleged that the locker was rented to him as part of his membership dues to afford security for valuables, and that defendant failed to provide adequate security pursuant to its undertaking.

Defendant introduced a copy of its rules which contain a disclaimer to the effect that it would not be responsible for lost or stolen articles. A space was provided for members to sign an acceptance of the rules, but plaintiff testified that he probably received a copy of the rules but did not sign one. Defendant did not produce a signed copy. Defendant also established that signs were posted which disclaimed responsibility for articles left in the locker room. The evidence further showed that members, at the time of the incident, were not permitted to use their own locks even

though the lockers had handles which would permit the use of individually owned locks. This policy has since been changed by the defendant.

Plaintiff contends that defendant was negligent in hiring employees who were not trustworthy and in permitting unauthorized persons to enter the premises and walk into the locker room without hindrance.

Defendant denies any negligence and contends that absent any showing of actual negligence that it could not be held responsible for the loss. This court cannot agree with the defendant's position and finds for the plaintiff for the following reasons.

The plaintiff seems to believe that a bailment was created by his deposit of the property in the locker. Whether there was a bailment, a lessor-lessee relationship or a license or privilege to use the locker may not be readily apparent at the outset. However, the conclusion of the court is not affected thereby.

If the relationship consisted of a bailment the question of whether it was a gratuitous bailment or one for mutual benefit of bailor and bailee would determine the amount of care owed by the bailee to the bailor. 5 Fla. Jur. 2d, 85.

> "The test of the liability of a bailee for the loss of entrusted property is whether the bailee exercised that degree of care towards the goods that a reasonably prudent person would bestow on his own goods." 5 Fla. Jur. 2d 83.

*Freuhauf Corporation v. Aetna Insurance Co.*, 336 So.2d 457 (Fla. 1st D.C.A.).

If, on the other hand, the relationship between the parties was not a bailment but that of a lessor-lessee or a license or privilege to use the locker, the plaintiff nevertheless would still have the burden of showing that the defendant failed to exercise ordinary care or was at least negligent in discharging its responsibility.

The question of the measure of care to be expected from a bailee or the operator of a locker room department would seem to turn on the amount of control vested in the "bailee" of the personal property. In *Marsh v. American Locker Company*, 72 Atlantic 2d 343 (Superior Court of New Jersey, Appellate Div. 1950) plaintiff deposited jewelry in a locker room in a station waiting room. He placed a coin in the receptacle, locked the door and took the key. Upon his return, the jewelry was missing. He filed a suit in two counts — (1) breach of contract of bailment to keep his goods safely, and (2) a breach of duty in negligently caring for the jewelry.

The court held that there was no bailment, citing Jones, *"The Parking Lot Cases"* 27 Goe. L. J. 162 (1938) where it was stated,

"whether delivery of the car to the parking lot amounts to a bailment . . . or a license or privilege . . . will turn on the amount of control exercised by the parking lot operator."

The court cited 4 Williston, *Contracts* 1888 (1936), in re safety deposit boxes where, although the depositor is given a key to the box, the box is placed in a position which is wholly within the possession and control of the other party and not accessible to the depositor without the former's consent. Here the court held that the depositors retain primary physical control of the items deposited *and no human being acting on defendant's behalf participated or received possession of plaintiff's property.* (Emphasis supplied) The court held that defendant did not establish a common law bailment sufficient to withstand a motion of dismissal without any affirmaive showing of negligence —

"A contrary view would afford greater protection to those who choose to avail themselves of the automatic facilities at a nominal charge than they ought reasonably anticipate . . .

With reference to Count 2 and defendant's failure to exercise due care, the court pointed out that there was no proof that the locker and lock were not of a proper standard or in suitable working order. No question was raised that the lockers were unguarded as this was perfectly obvious to the plaintiff when he chose to use the facility. "The mere happening of the loss did not indicate fault by the defendant and no negligence was thereby established."

However, in the case sub judice, the plaintiff was not given the latitude afforded persons who choose to use coin operated lockers as usually provided in public waiting rooms. In order to avail himself of the privilege of using the club facilities it was apparent that plaintiff would be obliged to remove his outer clothing and personal belongings and place them in some facility provided by the club. Clearly, the operation of coin operated lockers in a public waiting room cannot be considered analogous to the facilities sub judice.

Regardless of the relationship between plaintiff and defendant, the question is what duty, if any, the defendant would have to its members who avail themselves of the facilities. It is well settled that a duty to exercise care is not necessarily dependent on a valuable consideration. Even a gratuitous undertaking will create a duty to exercise some degree of care, even a minimum standard

of ordinary care in the performance of the undertaking. 23 Fla. Jur. 260 (§13).

In *I.T.T. Consumers Service Corp. v. Travelers Indemnity Co.*, 256 So.2d 74 (3rd D.C.A. 1972), the court held that the bailor having proved the bailment and loss of the chattel while in possession of the bailee made a prima facie case, and "the duty then devolved upon the bailee to go forward with the evidence and show that it exercised ordinary care." The same standard is applicable whether the relationship was a bailment or a lease arrangement.

In Clermont Marine Sales, Inc. v. Harmon, 347 So.2d 839 (2d D.C.A. 1977), the court said —

> "Given delivery of a bailed chattel and a failure to return it in accordance with the terms of the bailment agreement, a presumption of negligence on the part of the bailee arises unless he satisfactorily explains such failure for the loss, damages or disappearance of the chattel. The law imposes on the *bailee* [emphasis in opinion] the burden showing that he exercised the degree of care required by the nature of the bailment."

In *Adelman v. M. & S. Welding Shop*, 105 So.2d 802 (3rd D.C.A. 1958), the court stated —

> "[I]t is a rule of law relating to pleadings that the rule requiring certainty in pleading is greatly relaxed when the matter is peculiarly within the knowledge of the adversary." Citing 41 Am. Jur., Pleading.

The form of the action is no longer considered of any great importance. See R.C.P. 1.110(a). Whether the cause of action sounds in contract or tort is not an essential element as long as the substantive rights of the parties are not thereby affected. *Adelman v. M. & S. Welding Shop*, supra. The defendant should be required to go forward with evidence sufficient to raise doubts as to the inference which is raised by those facts in favor of the bailor. *Stegmann v. Miami Beach Boat Slips* (5th Cir., 213 F.2d 561). Here the court held that the bailor has the burden of proof by showing that the [chattel] was delivered to the bailee and the bailee then has the duty to go forward with the evidence and show affirmatively that he exercised ordinary care.

The plaintiff showed that he deposited his property in the locker, locked the door, removed the key and took it with him, subsequently finding that his money and property had been removed by someone thereafter.

The defendant has failed to show that it exercised ordinary care in discharging its responsibilities to the plaintiff when it provided the locker space for his personal property.

Defendant has emphasized that it had posted signs disclaiming responsibility for personal belongings left in the lockers, and that it had caused printed rules to be prepared which were to be signed by members which would acknowledge that defendant disclaimed any liability for loss. An exculpatory clause would be effective if the evidence shows that the parties were in an equal bargaining position. If the party sustaining the loss had a choice which he could exercise with equal facility to avoid the relationship, the disclaimer might be operative. Here, having provided the use of its facilities, it would only be logical that the defendant cannot disclaim any responsibility and avoid all liability for the safekeeping of members' personal belongings. *Ivey Plants, Inc. v. F. M. C. Corp.*, 282 So.2d 205, at 208, (4th D.C.A. 1973).

The defendant also sought to avoid liability by claiming that it simply was not negligent in its operation of the locker room and a denial of any knowledge of how the break-in had occurred. However, as stated in *Adelman v. M. & S. Welding Shop*, supra, the court held that the defendant should be required to go forward with evidence sufficient to raise doubts as to the inference raised in favor of the bailor. Without some affirmative facts to dispel the presumption of negligence or lack of exercise of ordinary care, the prima facie case in favor of the plaintiff is sufficient to sustain his position.

Wherefore, this court finds in favor of the plaintiff, and enters judgment in the amount of $975, together with the costs of this action, for which let execution issue.