820 So.2d 957 (2002)
GULFSTREAM PARK RACING ASSOCIATION, INC., Appellant,
v.
GOLD SPUR STABLE, INC., a New Jersey corporation, Agricultural Insurance Company, a foreign corporation, as subrogee of Gold Spur Stable, Inc., a New Jersey corporation, and John C. Kimmel, Appellees.
No. 4D01-359.
District Court of Appeal of Florida, Fourth District.
May 22, 2002.
Rehearing Denied July 25, 2002.
*958 Caryn L. Bellus of Kubicki Draper, Miami, for appellant.
Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Joseph M. Loughren of Loughren & Doyle, P.A., Fort Lauderdale, for AppelleeJohn C. Kimmel.
TAYLOR, J.
Gulfstream Park Racing Association, Inc. (Gulfstream) appeals a trial court order granting summary judgment in favor of third-party defendant and appellee, John C. Kimmel (Dr. Kimmel). This appeal arises from an incident wherein a thoroughbred horse, named Devil's Cup, fractured a bone in his right front leg while racing on the turf course at Gulfstream Park. After several months of medical care, the horse was put down. The *959 owner of the horse, Gold Spur Stable, Inc. (Gold Spur), sued Gulfstream, alleging negligence in the design, maintenance, and operation of the track and failure to warn Gold Spur of any dangerous conditions.
Gulfstream denied any negligence and affirmatively asserted that Gold Spur was comparatively negligent. It further claimed that the negligence of third parties, including the horse's veterinarian and trainer, Dr. Kimmel, contributed to Gold Spur's damages. Gulfstream filed a third-party complaint against Dr. Kimmel for contribution and contractual indemnification. Gulfstream's contribution count was predicated on a duty of care that Dr. Kimmel, as trainer, allegedly owed to Gold Spur to protect the horse from unreasonably dangerous conditions. Specifically, Gulfstream alleged that Dr. Kimmel knew or should have known of the "soft" and wet conditions of the track, yet, despite having discretion to withhold Devil's Cup from the race, allowed the horse to run on the turf track that day. Gulfstream's second count, contractual indemnity, was based upon release and assumption of risk provisions contained in documents executed by Dr. Kimmel, as agent for Gold Spur.
In response to Gulfstream's requests for admissions and in his deposition, Dr. Kimmel acknowledged that he was responsible for the care, safety, and well-being of the horse. He testified that on the day of the race, he knew that the turf was soft because there had been a significant amount of rain. He did not walk the course to examine the track before the race.[1] He admitted that he was uncertain how Devil's Cup would handle the soft turf because the horse had never raced on soft turf before. Further, he was aware that Devil's Cup had undergone surgery for a synovial cyst in a hind leg when he was two years old.
Dr. Kimmel acknowledged that as the trainer, he was advisor to the horse's owner and had authority to withdraw or scratch the horse from the race for any reason, up until the time that the horse entered the starting gate. Dr. Kimmel and Alan Quartucci, the racing manager for Gold Spur, discussed the turf course conditions that day, and both expressed concern about whether Devil's Cup should run in the race. Despite their concerns, they allowed the horse to race.
Several witnesses were deposed concerning a trainer's duties and obligations to the owner of the horse. These witnesses, mostly horse trainers, said that trainers have a duty to assess the track before deciding whether to run their horses and that they can scratch a horse from a race if they feel that a track is unsafe. They noted that some trainers routinely walk the turf course before every race; they agreed that every trainer should inspect the course if they have safety concerns.
Doug Donn, the president and chief executive officer of Gulfstream, gave similar testimony regarding a trainer's duties and responsibilities. However, in his opinion, the turf was not a factor in Devil's Cup's injury, since no other horses in the turf races suffered any injury. Another witness opined that Devil's Cup broke down because the horse was lame going into the race and had been sore through training.
Dr. Kimmel moved for summary judgment against Gulfstream on the contribution and indemnification counts. He argued that the only negligence alleged by Gold Spur was the negligence of Gulfstream *960 for maintenance, design and operation of the race track, for which he had no joint liability. As to indemnification, Dr. Kimmel argued that the indemnity clause in the Stall Agreement[2] does not clearly and unequivocally state that he must indemnify Gulfstream for its own negligence, but only allows indemnification for Dr. Kimmel's negligence. After determining that there were no disputed facts on these issues, the trial court granted summary judgment in favor of Dr. Kimmel.
A party moving for summary judgment must conclusively demonstrate the absence of any genuine issue of material fact and the moving party's entitlement to judgment as a matter of law. See Wills v. Sears, Roebuck & Co. 351 So.2d 29, 30 (Fla.1977); Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966); Johnson v. Treasure Coast Plaza, Ltd., 670 So.2d 1199, 1201 (Fla. 4th DCA 1996); Berenson v. S. Baptist Hosp. of Fla., Inc., 646 So.2d 809, 810 (Fla. 1st DCA 1994); Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). Summary judgments are reviewed de novo on appeal. See Gasch v. Harris, 808 So.2d 1260, 1261 (Fla. 4th DCA 2002). On review, the court must indulge every possible inference in favor of the party against whom summary judgment was granted. Wills, 351 So.2d at 32.
Moreover, in negligence cases, summary judgment should be cautiously granted. Gonzalez v. B & B Cash Grocery Stores, Inc., 692 So.2d 297, 299 (Fla. 4th DCA 1997)(citing Moore v. Morris, 475 So.2d 666, 668 (Fla.1985)); Johnson v. Treasure Coast Plaza, Ltd., 670 So.2d 1199, 1201 (Fla. 4th DCA 1996). The issue of negligence, and more specifically, the determination of proximate cause, is ordinarily a question that should be left for a jury. McDonald v. Fla. Dep't of Transp., 655 So.2d 1164, 1168 (Fla. 4th DCA 1995); Grall v. Risden, 167 So.2d 610, 612 (Fla. 2d DCA 1964); see Sol Walker & Co. v. Seaboard Coast Line R.R. Co., 362 So.2d 45, 50 (Fla. 2d DCA 1978)(holding that whether the negligent acts of parties combined to become the proximate cause of the injury was a question for the jury). Further, "[u]nless a movant can show unequivocally that there was no negligence, or that plaintiffs negligence was the sole proximate cause of the injury, courts will not be disposed to granting summary judgment in his favor." Wills, 351 So.2d at 31. As the movant, Dr. Kimmel had the burden to prove to the trial court that no genuine issue of material fact existed with regard to Gulfstream's claims for contribution and indemnification and that he was entitled to judgment as a matter of law on both counts.

Contribution
In its third party complaint against Dr. Kimmel, Gulfstream alleged that if it were found negligent, Dr. Kimmel's negligence may have contributed to the horse's injury. Gulfstream's claim for contribution was based upon the Uniform Contribution Among Joint Tortfeasors Act. § 768.31, Fla. Stat. (1997). This act provides, in pertinent part:
Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
§ 768.31(2)(a).
As long as the parties share a common liability, a right to contribution *961 exists, even where the liability of the parties rests on different grounds. See Wallace v. Strassel, 479 So.2d 231, 233 (Fla. 4th DCA 1985). The "`essence of the action for contribution is common liability to the injured person, not liability for common negligence, or similar negligence, or like negligence.'" Id. at 235 (emphasis in original)(quoting Chicago, R.I. & P.R. Co. v. Chicago & N.W. Ry. Co., 280 F.2d 110, 114 (8th Cir.1960)). Common liability means that "`each party, by reason of his wrongful act, is made legally liable to respond in damages to the injured party.'" Id.
In this case, whether Dr. Kimmel was negligent and whether his negligence combined with Gulfstream's alleged negligence to cause Devil's Cup's injury were questions for the jury. Based on the record, there are genuine issues of fact regarding whether Dr. Kimmel breached his duties to Gold Spur by negligently failing to scratch Devil's Cup from the race, thereby contributing to the horse's injuries. To prevail on his motion for summary judgment, Dr. Kimmel had to conclusively disprove these allegations against him. The record evidence, as recounted above, demonstrates that there is, at a minimum, a reasonable inference that Dr. Kimmel was negligent in allowing the horse to race under conditions which he feared might compromise its safety. As such, the trial court erred in granting summary judgment on this count.
Dr. Kimmel argues that Gulfstream's third-party complaint for contribution is impermissible under Rule 1.180, Florida Rules of Civil Procedure, because the two claims do not arise out of the same transaction or occurrence as is required by the rule. We reject this argument. Pursuant to Rule 1.180(a):
At any time after commencement of the action a defendant may have a summons and complaint served on a person not a party to the action who is or may be liable to the defendant for all or part of the plaintiffs claim against the defendant, and may also assert any other claim that arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim.
Here, the evidence demonstrates that Gulfstream's claim arose out of the same transaction or occurrencethe race. Gold Spur's claim is based upon Gulfstream's negligence in failing to provide a safe track for the horses to run. In turn, Gulfstream's claim against Dr. Kimmel is based upon his negligence in allowing the horse to run on an unstable track. Both of these claims arise out of the accident wherein Devil's Cup broke his leg. Further, the third-party complaint is proper because of allegations that Gulfstream and Dr. Kimmel may share a common liability for injury to Devil's Cup.

Indemnification
Gulfstream also argues that the trial court erred in granting summary judgment to Dr. Kimmel on the indemnification count. Gulfstream's claim for indemnification was based on the Stall Agreement signed by Dr. Kimmel as Gold Spur's agent. The relevant portions of the Stall Agreement provide:
6.B.(1) Trainer hereby agrees to indemnify, hold harmless and defent [sic] Gulfstream and its officers, directors, agents, representatives, employees, successors and assigns from any claims, losses, liabilities or demands whatsoever, including claims [sic] for medical and hospital bills, resulting from or arising directly or indirectly from the acts or omissions of Trainer and its agents, servants, employees, owners or invitees, in whole or in part, from or on [sic] of or in connection *962 with Trainer's activities at Gulfstream Park.
* * *
6.B.(2) This indemnification provision shall not be effective as to any loss attributsble [sic] exclusively to the negligence or willful act or omission of Gulfstream.
* * *
6.D. Trainer assumes full responsibility for the safety and well-being of all horses under his care, custody and control while stabled at Gulfstream Park or while otherwise on Gulfstream's property utilizing the facilities.... Accordingly, Trainer agrees to take all reasonable measures for the protection of such horses, including providing adequate supervision of such horses while utilizing Gulfstream's facilities .... Furthermore, the undersigned acknowledges that Gulfstream has no obligation to remedy any condition at Gulfstream Park, including the racing surfaces, unless Gulfstream has prior written notice of the existence of such condition and has a reasonable opportunity to repair such condition.
Dr. Kimmel argues that the indemnity clause in the Stall Agreement does not require him to indemnify Gulfstream for its own negligence, but only allows indemnification for Dr. Kimmel's negligence. He relies on Univ. Plaza Shopping Ctr. v. Stewart, 272 So.2d 507 (Fla.1973). There, the supreme court reviewed an agreement purporting to indemnify a landlord for consequences arising solely from its own negligence. The court held that the general terms "`indemnify ... against any and all claims' [did] not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee." Id. at 511. After reviewing conflicting decisions in Florida on indemnity provisions, the court announced that a contract which attempts to relieve a party of its own negligence will be upheld only if it expresses such intent in clear and unequivocal terms. Id. at 509.
Here, Dr. Kimmel argues that because there is no language in the Stall Agreement specifically stating that he would indemnify Gulfstream for acts of Gulfstream's own negligence, the agreement falls short of the "clear and unequivocal" standard enunciated in Univ. Plaza. Therefore the trial court correctly granted him summary judgment as a matter of law. Gulfstream counters that the Stall Agreement does not provide for indemnification for its sole negligence; it provides that Dr. Kimmel must indemnify Gulfstream if Gulfstream and Dr. Kimmel are jointly negligent and it does so in clear and unambiguous terms. Gulfstream contends that the test for upholding such an agreement is not whether the contract actually contains the phrase "its own negligence" but whether its language is so clear and understandable that an ordinary party will know what he is contracting away. See Lantz v. Iron Horse Saloon, 717 So.2d 590, 591 (Fla. 5th DCA 1998); Leonard L. Farber Co. v. Jaksch, 335 So.2d 847, 848-49 (Fla. 4th DCA 1976).
In Leonard L. Farber Co., a shopping mall patron sued the lessor and lessee of a shopping mall for injuries she sustained when she slipped on a piece of sausage lying on a common walkway within the mall. The indemnity provision contained in the contract between the lessor and lessee stated:
Lessee shall indemnify Lessor and save it harmless from suits, actions, damages, liability and expense in connection with loss of life, bodily or personal injury or property damage arising from or out of any occurrence in, upon or at or from *963 the Demised Premises or any part thereof, or occasioned wholly or in part by any act or omission of Lessee,....
Id. at 847-48. We determined that the language "occasioned wholly or in part by any act or omission of Lessee" was sufficiently clear and unequivocal so as to make the Lessee liable for the joint negligence of the Lessor and the Lessee. Id. at 848; see also Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979)(noting that we "correctly determined [in Leonard L. Farber Co.] that the `in part' language manifested lessee's clear and unequivocal intent to indemnify lessor in cases where the lessee and lessor are found to be jointly at fault").
Similarly, in Marino v. Weiner, 415 So.2d 149 (Fla. 4th DCA 1982), we found that the phrase "occasioned wholly or in part by an act or omission of [l]essee ..." manifested the unequivocal intent to indemnify the lessor where joint negligence existed. Id. at 151; see also Mitchell Maint. Sys. v. Dept. of Transp., 442 So.2d 276, 277 (Fla. 4th DCA 1983)(upholding an indemnification agreement which provided that there would be indemnification except in instances of the indemnitee's sole negligence).
In this case, the language of the Stall Agreement is in line with the above cases. The language of 6.B.(1), which states that Kimmel will indemnify Gulfstream for any "claims, losses, liabilities or demands whatsoever ... resulting from or arising directly or indirectly from the acts or omissions of Trainer ... in whole or in part ..." is consistent with the holdings of Leonard L. Farber Co. and Marino. The language of 6.B.(2), which states that the provision "shall not be effective as to any loss [attributable] exclusively to the negligence or willful act or omission of Gulfstream" is consistent with the holding of Mitchell Maint. Sys.
We conclude that the Stall Agreement clearly and unequivocally provides that Dr. Kimmel must indemnify Gulfstream except where it is determined that Gulfstream was exclusively or solely negligent. Because genuine issues of material fact exist as to Dr. Kimmel's negligence, the trial court erred in granting Dr. Kimmel's motion for summary judgment on the indemnification count. Accordingly, we reverse the order granting final summary judgment and remand this case for further proceedings.
REVERSED and REMANDED.
SHAHOOD, J., and ANGELOS, CYNTHIA, Associate Judge, concur.
NOTES
[1] Dr. Kimmel testified that he could have walked the track, but that he rarely walks a course before a race because the turf course is inside the dirt course, and on a muddy or sloppy day it is impossible to get there without getting covered in mud.
[2] The Stall Agreement was titled "Application for Stall Space; Conditions to Stabling, Entry in Races, Release and Indemnification Agreement."